UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | | |
|---|---|---|
| JOHN Z., | ) | No. ED CV 18-785-PLA |
| Plaintiff, | ) ) ) | **MEMORANDUM OPINION AND ORDER** |
| v. | ) ) | |
| ANDREW M. SAUL, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) ) ) ) | |
| Defendant. | ) ) | |

**I.**

**PROCEEDINGS**

Plaintiff[1] filed this action on April 18, 2018, seeking review of the Commissioner's[2] denial of his application for Disability Insurance Benefits ("DIB"). The parties filed Consents to proceed before a Magistrate Judge on May 9, 2018, and May 23, 2018. Pursuant to the Court's Order, the

---

[1] In the interest of protecting plaintiff's privacy, this Memorandum Opinion and Order uses plaintiff's (1) first name and last initial, and (2) year of birth in lieu of a complete birth date. See Fed. R. Civ. P. 5.2(c)(2)(B), Local Rule 5.2-1.

[2] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul, the newly-appointed Commissioner of the Social Security Administration, is hereby substituted as the defendant herein.

parties filed a Joint Submission (alternatively "JS") on March 13, 2019, that addresses their positions concerning the disputed issue in the case. The Court has taken the Joint Submission under submission without oral argument.

## II.
## BACKGROUND

Plaintiff was born in 1962. [Administrative Record ("AR") at 25, 171.] He has past relevant work experience in communication equipment sales and as a technical support representative. [AR at 25, 69.]

On April 7, 2014, plaintiff filed an application for a period of disability and DIB, alleging that he has been unable to work since October 12, 2012. [AR at 18; see AR at 169.] After his application was denied initially and upon reconsideration, plaintiff timely filed a request for a hearing before an Administrative Law Judge ("ALJ"). [AR at 118-21.] A hearing was held on January 9, 2017, at which time plaintiff appeared represented by an attorney, and testified on his own behalf. [AR at 18, 40-78.] A vocational expert ("VE") also testified. [AR at 68-77.] On February 10, 2017, the ALJ issued a decision concluding that plaintiff was not under a disability from October 12, 2012, the alleged onset date, through February 10, 2017, the date of the decision. [AR at 18-26.] Plaintiff requested review of the ALJ's decision by the Appeals Council. [AR at 165-68.] When the Appeals Council denied plaintiff's request for review on February 12, 2018 [AR at 1-5], the ALJ's decision became the final decision of the Commissioner. See Sam v. Astrue, 550 F.3d 808, 810 (9th Cir. 2008) (per curiam) (citations omitted). This action followed.

## III.
## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Berry v. Astrue, 622 F.3d 1228, 1231 (9th Cir. 2010) (citation omitted).

"Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Revels v. Berryhill, 874 F.3d 648, 654 (9th Cir. 2017) (citation omitted). "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." Id. (internal quotation marks and citation omitted). However, the Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." Id. (quoting Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014) (internal quotation marks omitted)). The Court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." Id. (internal quotation marks and citation omitted); see also SEC v. Chenery Corp., 318 U.S. 80, 87, 63 S. Ct. 454, 87 L. Ed. 626 (1943) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.").

## IV.
## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. Garcia v. Comm'r of Soc. Sec., 768 F.3d 925, 930 (9th Cir. 2014) (quoting 42 U.S.C. § 423(d)(1)(A)).

**A.    THE FIVE-STEP EVALUATION PROCESS**

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006) (citing Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999)). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Lounsburry,

468 F.3d at 1114. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. § 404, subpart P, appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that he is unable to perform past relevant work. Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992). If the claimant meets this burden, a prima facie case of disability is established. Id. The Commissioner then bears the burden of establishing that the claimant is not disabled because there is other work existing in "significant numbers" in the national or regional economy the claimant can do, either (1) by the testimony of a VE, or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. part 404, subpart P, appendix 2. Lounsburry, 468 F.3d at 1114. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 721, 828 n.5 (9th Cir. 1995); Drouin, 966 F.2d at 1257.

**B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity from October 12, 2012, the alleged onset date, through July 22, 2015, a period of more than 12 consecutive months.[3] [AR at 20.] However, he also found that plaintiff engaged in substantial

---

[3] The ALJ concluded that plaintiff met the insured status requirements of the Social Security Act through December 31, 2018. [AR at 20.]

4

gainful activity from July 22, 2015, through the date of the decision.[4]  At step two, the ALJ concluded that plaintiff had the severe impairments of diabetes mellitus with associated neuropathy in upper and lower extremities, and obesity.  [AR at 21.]  At step three, the ALJ determined that plaintiff did not have an impairment or a combination of impairments that met or medically equaled any of the impairments in the Listing.  [Id.]  The ALJ further found that during the relevant period plaintiff retained the residual functional capacity ("RFC")[5] to perform a less than light level of exertional work as defined in 20 C.F.R. § 404.1567(b),[6] as follows:

> Specifically, [he] could lift, carry, push and pull 20 pounds occasionally and 10 pounds frequently.  He could stand and walk for 2 hours out of an 8-hour period.  He could sit for 6 hours out of an 8-hour day, but only for 3 hours at a time.  [He] could occasionally balance, squat, crawl, climb, stoop, crouch and kneel.  He could not have any exposure to unprotected heights.  [He] could frequently work around moving machinery, frequently be exposed to marked temperature changes, and frequently drive a motor vehicle.  He could have occasional exposure to dust, fumes, gases and noise.  Additionally, due to fatigue and neurological effects of diabetes and [his] diabetic medication regimen, he was limited to performing simple and routine tasks, but not at a production rate.

[AR at 22.]

---

[4]  With respect to this period, the ALJ denied plaintiff's application because plaintiff engaged in substantial gainful activity ("SGA").  [AR at 20.]  However, because plaintiff did not engage in SGA during the period from October 12, 2012, through July 22, 2015 ("the relevant period"), a period of more than 12 months, the claim was not denied.  [Id.]  Accordingly, the ALJ proceeded with the sequential evaluation process and considered the period during which plaintiff did not perform SGA.  [Id.]

[5]  RFC is what a claimant can still do despite existing exertional and nonexertional limitations.  See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).  "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity."  Massachi v. Astrue, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007) (citation omitted).

[6]  "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."  20 C.F.R. § 404.1567(b).

At step four, based on plaintiff's RFC and the testimony of the VE, the ALJ concluded that plaintiff was unable to perform his past relevant work in communication equipment sales and as a technical support representative. [AR at 25.] At step five, based on plaintiff's RFC, vocational factors, and the VE's testimony, the ALJ found that there are jobs existing in significant numbers in the national economy that plaintiff can perform, including work as a "marking clerk" (Dictionary of Occupational Titles ("DOT") No. 209.587-034), "routing clerk" (DOT No. 222.587-038), and "information clerk" (DOT No. 237.367-018). [AR at 26.] Accordingly, the ALJ determined that plaintiff was not disabled at any time from the alleged onset date of October 12, 2012, through February 10, 2017, the date of the decision. [AR at 26.]

## V.

## THE ALJ'S DECISION

Plaintiff contends the ALJ erred when he rejected plaintiff's subjective symptom testimony. [JS at 5.] Specifically, plaintiff contends the ALJ erred when he relied on the following reasons to reject the testimony: (1) the objective medical evidence, (2) plaintiff's treatment history, and (3) plaintiff's return to full time work. [JS at 7-9.] As set forth below, the Court respectfully disagrees with plaintiff and affirms the decision of the ALJ.

**A.    SUBJECTIVE SYMPTOM TESTIMONY**

**1.    Legal Standard**

Plaintiff contends the ALJ "impermissibly rejected the plaintiff's subjective symptom testimony." [JS at 5.]

The ALJ summarized plaintiff's testimony as follows:

[Plaintiff] testified that he began working for the Amazon Fulfillment Center on July 22, 2015. He indicated that since that date he has worked full time putting in 10-hour days, nine hours of which are on his feet. [Plaintiff] reported that he works in the receiving department and he is required to lift 20 pounds occasionally throughout the day. [Plaintiff] stated that his arms and back hurt, but that he pushes through the pain. [Plaintiff] testified that the primary reason he could not work was because his muscles ached and he suffered from fatigue. [Plaintiff] reported that he injects insulin twice per day and takes Motrin for his aches and pains. [He] admitted that prior to working at Amazon, he was able to wash dishes, empty the trash and did not

require any extra assistance. [Plaintiff] claimed that the biggest impact of his impairments is fatigue and muscle aches.

[AR at 22, 52-54.]

The ALJ found plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence in the record. [AR at 23.] Prior to the ALJ's assessment in this case, Social Security Ruling ("SSR")[7] 16-3p went into effect. See SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017).[8] SSR 16-3p supersedes SSR 96-7p, the previous policy governing the evaluation of subjective symptoms. SSR 16-3p, 2017 WL 5180304, at *2. SSR 16-3p indicates that "we are eliminating the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term." Id. Moreover, "[i]n doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character[;] [i]nstead, we will more closely follow our regulatory language regarding symptom evaluation." Id.; Trevizo, 871 F.3d at 678 n.5. Thus, the adjudicator "will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation. The focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person." SSR 16-3p, 2017 WL 5180304, at *11. The ALJ is instructed to "consider all of the evidence in an individual's record," "to determine how symptoms

---

[7] "SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." Holohan v. Massanari, 246 F.3d 1195, 1202 n.1 (9th Cir. 2001) (citations omitted).

[8] SSR 16-3p, originally "effective" on March 28, 2016, was republished on October 25, 2017, with the revision indicating that SSR 16-3p was "applicable [rather than effective] on March 28, 2016." See 82 Fed. Reg. 49462, 49468 & n.27, 2017 WL 4790249, 4790249 (Oct. 25, 2017); SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017). Other than also updating "citations to reflect [other] revised regulations that became effective on March 27, 2017," the Administration stated that SSR 16-3p "is otherwise unchanged, and provides guidance about how we evaluate statements regarding the intensity, persistence, and limiting effects of symptoms in disability claims . . . ." Id. The Ninth Circuit recently noted that SSR 16-3p is consistent with its prior precedent. Trevizo v. Berryhill, 871 F.3d 664, 678 n.5 (9th Cir. 2017) (SSR 16-3p "makes clear what [Ninth Circuit] precedent already required"). Thus, while SSR 16-3p eliminated the use of the term "credibility," case law using that term is still instructive in the Court's analysis.

limit ability to perform work-related activities." Id. at *2. The Ninth Circuit also noted that SSR 16-3p "makes clear what our precedent already required: that assessments of an individual's testimony by an ALJ are designed to 'evaluate the intensity and persistence of symptoms after [the ALJ] find[s] that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms,' and 'not to delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness.'" Trevizo, 871 F.3d at 678 n.5 (citing SSR 16-3p).

To determine the extent to which a claimant's symptom testimony must be credited, the Ninth Circuit has "established a two-step analysis." Trevizo, 871 F.3d at 678 (citing Garrison, 759 F.3d at 1014-15). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." Id. (quoting Garrison, 759 F.3d at 1014-15); Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1102 (9th Cir. 2014) (quoting Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007)) (internal quotation marks omitted). If the claimant meets the first test, and the ALJ does not make a "finding of malingering based on affirmative evidence thereof" (Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006)), the ALJ must "evaluate the intensity and persistence of [the] individual's symptoms . . . and determine the extent to which [those] symptoms limit [his] . . . ability to perform work-related activities . . . ." SSR 16-3p, 2017 WL 5180304, at *4. In assessing the intensity and persistence of symptoms, the ALJ must consider a claimant's daily activities; the location, duration, frequency, and intensity of the pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness and side effects of medication taken to alleviate pain or other symptoms; treatment, other than medication received for relief of pain or other symptoms; any other measures used to relieve pain or other symptoms; and other factors concerning a claimant's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 416.929; see also Smolen v. Chater, 80 F.3d 1273, 1283-84 & n.8; SSR 16-3p, 2017 WL 5180304, at *4 ("[The Commissioner] examine[s] the entire case record, including the objective medical evidence; an individual's statements . . . ; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record.").

Where, as here, plaintiff has presented evidence of an underlying impairment, and the ALJ did not make a finding of malingering, the ALJ's reasons for rejecting a claimant's subjective symptom statements must be specific, clear and convincing. Brown-Hunter v. Colvin, 806 F.3d 487, 488-89 (9th Cir. 2015); Burrell v. Colvin, 775 F.3d 1133, 1136 (9th Cir. 2014) (citing Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012)); Trevizo, 871 F.3d at 678 (citing Garrison, 759 F.3d at 1014-15); Treichler, 775 F.3d at 1102. "General findings [regarding a claimant's credibility] are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." Burrell, 775 F.3d at 1138 (quoting Lester, 81 F.3d at 834) (quotation marks omitted). The ALJ's findings "'must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.'" Brown-Hunter, 806 F.3d at 493 (quoting Bunnell v. Sullivan, 947 F.2d 341, 345-46 (9th Cir. 1991) (en banc)). A "reviewing court should not be forced to speculate as to the grounds for an adjudicator's rejection of a claimant's allegations of disabling pain." Bunnell, 947 F.2d at 346. As such, an "implicit" finding that a plaintiff's testimony is not credible is insufficient. Albalos v. Sullivan, 907 F.2d 871, 874 (9th Cir. 1990) (per curiam).

Here, in discounting plaintiff's testimony, the ALJ found the following: (1) the objective medical evidence does not support the alleged severity of plaintiff's symptoms, (2) plaintiff received only mild and conservative treatment, and (3) plaintiff returned to full-time work in July 2015, indicating greater ability than he alleged. [AR at 22-24.]

### 2. Objective Evidence

The ALJ acknowledged plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. [AR at 23.] However, the ALJ found that plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms" were inconsistent with the medical record and other evidence in the record. [Id.]

Plaintiff argues the ALJ's determination that plaintiff's subjective symptom testimony is only "partially consistent" and that the objective medical evidence does not support the alleged severity

of his symptoms of disabling pain in his arms and legs, was not supported by substantial evidence. [JS at 9 (citing AR at 24).] He contends that "[b]ecause the ALJ's reasoning is not sufficient, any reliance on alleged lack of objective support must also fail." [JS at 9.] Plaintiff further contends the ALJ merely summarized the evidence and did not identify the testimony he found not credible and link that testimony to the parts of the record to support his determination. [JS at 10 (citing Brown-Hunter, 806 F.3d at 494).]

While a lack of objective medical evidence supporting a plaintiff's subjective complaints cannot provide the only basis to reject a claimant's subjective symptom testimony (Trevizo, 871 F.3d at 679 (quoting Robbins, 466 F.3d at 883)), it is one factor that an ALJ can consider in evaluating symptom testimony. See Burch, 400 F.3d at 681 ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor the ALJ must consider in his credibility analysis."); SSR 16-3p, 2017 WL 5180304, at *5 ("objective medical evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms, including the effects those symptoms may have on the ability to perform work-related activities for an adult"). "The intensity, persistence, and limiting effects of many symptoms can be clinically observed and recorded in the medical evidence. . . . These findings may be consistent with an individual's statements about symptoms and their functional effects. However, when the results of tests are not consistent with other evidence in the record, they may be less supportive of an individual's statements about pain or other symptoms than test results and statements that are consistent with other evidence in the record." SSR 16-3p, 2017 WL 5180304, at *5. As the Ninth Circuit recently held, "an ALJ's 'vague allegation' that a claimant's testimony is 'not consistent with the objective medical evidence,' without any 'specific finding in support' of that conclusion, is insufficient." Treichler, 775 F.3d at 1103 (citation omitted); see Laborin v. Berryhill, 867 F.3d 1151, 1153 (9th Cir. 2017) (ALJ's statement that plaintiff's testimony regarding the intensity, persistence, and limiting effects of his symptoms was not credible to the extent his testimony is "inconsistent with the above residual functional capacity assessment" is an insufficient basis for discrediting testimony).

Here, the ALJ reviewed the objective medical records during the relevant period, as well

as medical evidence subsequent to the relevant period. [AR at 23.] He noted that on May 2, 2013, the records include an emergency room visit where "[plaintiff] presented with an acute onset shortness of breath, nausea and diaphoresis after walking up a number of stairs." [Id.] Plaintiff was advised to lose weight and maximize diabetic control and blood pressure. [Id.] The ALJ also noted that plaintiff "followed up with a primary care provider, Joel Pengson, M.D., on May 10, 2013, and reported lethargy, tiring easily and sudden exhaustion." [Id.] Thereafter, plaintiff's medications were adjusted and at a second visit two weeks later, "[plaintiff] had much better readings and reported no complaints." [Id.] The ALJ stated that plaintiff was seen again in October 2013, and it was documented that plaintiff had very poor diabetic control as he was dependent on samples due to financial constraints. [Id.] At this visit, plaintiff stated he was weak with ataxia, could not work, had poor concentration and positive polydipsia. [Id.] The ALJ also pointed to the record during the relevant period beginning in January 2014, through April 2015. [Id.] For instance, he noted the following: in January 2014, plaintiff had complaints of muscle aches in his arms and legs; in February 2014, plaintiff was advised that his muscle aches and tingling in his extremities could be linked to his diabetes; in July 2014, plaintiff continued reporting complaints of muscle pain in both arms; and, "[i]n April of 2015, the claimant's physical examination was remarkably normal and his diabetes was documented without complications with the use of insulin." [Id.] Based on the evidence above, the ALJ concluded that plaintiff's subjective complaints "are only partially consistent and the objective medical evidence does not support the alleged severity of his symptoms." [AR at 24.]

This was a specific, clear and convincing reason, supported by evidence in the record, for discounting plaintiff's subjective symptom testimony. However, because this cannot be the sole reason to reject a claimant's testimony, the ALJ's determination to discount plaintiff's subjective symptom testimony for this reason rises or falls with the ALJ's other grounds for discrediting plaintiff's testimony.

/

/

### 3. Conservative Treatment History

The ALJ found plaintiff's medical record "casts doubt on the consistency of [plaintiff's] allegations" and that "although [plaintiff] alleged severe and disabling pain, the medical record was relatively sparse." [AR at 23.] He noted that given plaintiff's allegations of such severe and disabling impairments, "one might expect to see a greater level of intervention and/or *more aggressive* treatment options." [Id. (emphasis added).] The ALJ also stated "[plaintiff] took only over-the-counter Motrin for pain." [JS at 16 (citing AR at 61).]

An ALJ may properly rely on the fact that only routine and conservative treatment has been prescribed. Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995). "Conservative treatment" has been characterized by the Ninth Circuit as, for example, "treat[ment] with an *over-the-counter pain medication*" (see, e.g., Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007) (emphasis added); Tommasetti v. Astrue, 533 F.3d 1035, 1040 (9th Cir. 2008) (holding that the ALJ properly considered the plaintiff's use of "conservative treatment including physical therapy and the use of anti-inflammatory medication, a transcutaneous electrical nerve stimulation unit, and a lumbosacral corset")), or a physician's failure "to prescribe . . . any serious medical treatment for [a claimant's] supposedly excruciating pain." Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." Berry, 622 F.3d at 1234 (internal quotation marks and citation omitted).

Here, although the ALJ suggested that a greater level of intervention and treatment would be expected in light of plaintiff's complaints, the ALJ failed to articulate what, if any, treatment other than medication was currently recommended or available for plaintiff's diabetes mellitus with associated neuropathy and obesity. He points to no evidence in the record that anything else had been recommended for plaintiff by a physician or was warranted for his conditions. Additionally, the ALJ failed to point to anything in the record to show that any specific treatment, other than the medication plaintiff was receiving, is a standard method for treating individuals with the type of pain or other limitations caused by plaintiff's physical impairments. The ALJ "must not succumb to the temptation to play doctor and make his own independent medical findings." Banks v.

12

Barnhart, 434 F.Supp.2d 800, 805 (C.D. Cal. 2006).

Thus, this was not a specific, clear and convincing reason for discounting plaintiff's subjective symptom testimony.

### 4. Return to Full-Time Work

The ALJ noted "the record reveals that [plaintiff's] allegedly disabling impairments were present at approximately the same level of severity prior to July 22, 2015," when he went back to full-time work. [AR at 24.] Based on this, the ALJ concluded "[t]he fact that the impairments did not prevent the claimant from working from that date to the present time strongly suggests that it would not have prevented work from July 21, 2015 and prior." [Id.]

Plaintiff contends his return to alternative work "is not inconsistent with his subjective claims of disability during the relevant closed period of disability." [JS at 8.] Plaintiff adds that a finding that his return to alternative work is inconsistent with his subjective claims of disability "perverts the intent of the Social Security Act." [Id.]

If an ALJ finds a claimant's characterization of his or her own symptoms unreliable, the ALJ must make a credibility determination backed up by specific findings. See Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir.1991). "[O]nce [plaintiff] produces objective medical evidence of an underlying impairment, an adjudicator may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate" plaintiff's allegations. Id. In reaching a credibility determination, an ALJ may weigh inconsistencies between the claimant's testimony and his or her conduct, daily activities, and work record, among other factors. See Light v. Soc.Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997).

Here, the ALJ discounted plaintiff's testimony based on his return to work on July 22, 2015. A review of the record supports the ALJ's finding that plaintiff's allegedly disabling impairments were indeed present at approximately the same level of severity prior to July 22, 2015. As these same impairments did not prevent plaintiff from working from July 22, 2015, to the present time, the ALJ did not err when he determined that plaintiff's impairments also would not have prevented plaintiff from working prior to July 22, 2015. [AR at 24.]

This was a specific, clear and convincing reason for discounting plaintiff's subjective symptom testimony.

## B. CONCLUSION

Based on the foregoing, in addition to his legally sufficient finding that plaintiff's subjective symptom testimony was not supported by the objective medical evidence, the ALJ provided at least one other clear and convincing reason for discounting plaintiff's subjective symptom testimony that also was "sufficiently specific" to allow this Court to conclude that the ALJ discounted plaintiff's testimony on permissible grounds and did not arbitrarily discredit his testimony regarding the intensity, persistence, and limiting effects of his impairments. Brown-Hunter, 806 F.3d at 493 (quoting Bunnell, 947 F.2d at 345-46). Remand is not warranted on this issue.

## VI.

## ORDER

**IT IS HEREBY ORDERED** that: (1) plaintiff's request for reversal, or in the alternative, remand, is **denied**; and (2) the decision of the Commissioner is **affirmed**.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: July 25, 2019

_____
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE